UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

D'AMORE BEVERLY,                )
                                )
              Plaintiff,        )
                                )
       v.                       )   Case No. 21-1165-MMM
                                )
CHERRYLE HINTHORNE, et. al.,    )
                                )
              Defendants.       )

## MERIT REVIEW ORDER – AMENDED COMPLAINT

**Michael M. Mihm, U.S. District Judge:**

Plaintiff, proceeding *pro se* and incarcerated at the Illinois River Correctional Center ("IRCC") has filed an amended complaint [ECF 8] under 42 U.S.C. § 1983. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## FACTS

Plaintiff fell while getting out of his top bunk at IRCC when a plastic chair he was using as a step slipped. He suffered injuries to his back and wrists. He argues that each of the three

Defendants—Warden Cherryle Hinthorne, Nurse Practitioner Brittney Miller, and Medical Director Kurt Osmundson—were aware of his unique heightened risks of falling and injuring himself. He argues that they were deliberately indifferent to this risk when they refused to issue him a low-bunk permit and/or transfer him to a cell where he could use end rails to reach his bed.

Prior to his incarceration, Plaintiff pleads that he was involved in several car accidents, and other events that left him with permanent back, neck, and thigh injuries. Once incarcerated, in October and November 2019, he alleges he was examined by Defendant Osmundson. Plaintiff discussed his previous injuries and offered to provide medical records as proof of his physical disabilities. Plaintiff told Defendant Osmundson that his back and right leg had already given out while trying to climb into/out of a top bunk at the prison due to the pain and that he had slipped and fallen multiple times. In response, Defendant Osmundson ordered x-rays. However, he told Plaintiff that his difficulties getting in and out of bed were caused by arthritis and being overweight. Defendant Osmundson ignored Plaintiff's offer to provide medical records that would have documented his previous injuries. Defendant Osmundson also refused Plaintiff's request for a bottom-bunk permit.

Next, Plaintiff alleges that he tried to get a bottom-bunk permit from Warden Cherryle Hinthorne. Sometime between December 15, 2019 and January 10, 2020, Plaintiff alleges he sent Defendant Hinthorne a letter outlining his disabilities and his difficulties reaching his top bunk. The letter explained that the bunk arrangement in his four-person cell made it impossible for him to climb onto his bed using the bed's end rails. Instead, he was forced to use a plastic chair to get in and out of bed. His letter said that he "was having incidents where the chair would slip and he would lose his balance and sometimes fall." He requested to be transferred to a cell in which he

would be able to reach the top bunk using the end rails. Plaintiff alleges that Defendant Hinthorne ignored his letter.

Next, on January 18, 2020, Plaintiff hurt his right knee in the prison's gym and was examined by Defendant Brittney Miller, a nurse practitioner. Plaintiff told Defendant Miller about his physical disabilities, that he was previously having trouble getting onto his top bunk because his back and right leg would give out due to pain, and that he had slipped and fallen while trying to get in and out. Defendant Miller treated Plaintiff for his swollen right knee, but refused Plaintiff's request for a bottom-bunk permit.

Five days later, on January 23, 2020, Plaintiff fell while climbing down from his top bunk. Plaintiff alleges that "when he stepped on the plastic chair it slipped" and he fell on the concrete floor.  He suffered further injuries to his back, as well as his wrists. He now cannot stand in place or sleep on his back for long periods of time without pain, has shooting pain/numbness in both of his legs, and has damage to his wrists. After this fall, Plaintiff was issued a bottom-bunk permit.

**ANALYSIS**

Plaintiff alleges that the three defendants were deliberately indifferent to his physical disabilities when they refused to issue him a bottom-bunk permit. "A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, No. 19-2440, 2022 WL 538716, at *6, --- F.4th --- (7th Cir. Feb. 23, 2022). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A plaintiff must allege "that an official actually knew of and disregarded a substantial risk

of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). A substantial risk of harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011). (internal citations omitted). "[T]he conditions presenting the risk must be sure or very likely to cause ... needless suffering, and give rise to sufficiently imminent dangers." *Id*.

      Plaintiff's allegations relate not just to the failure to accommodate his physical disability by issuing a bottom-bunk permit, but a failure to do so in light of the problem of his particular cell's arrangement that made him unable to use the bunk's end-rails. "In some cases, the failure to authorize a low bunk can amount to deliberate indifference, such as when the need is obvious yet ignored." *Boyd v. Bellin*, 835 F. App'x 886, 888 (7th Cir. 2021) (citing *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019)). Plaintiff does not allege that he informed Defendant Osmundson or Defendant Miller of his inability to use the bunk's end-rails, which required him to use a plastic chair to access his bunk. However, he did inform Defendant Osmundson and Defendant Miller that he had physical disabilities and that he had previously slipped and fallen multiple times climbing in and out of the top bunk. He also alleged that Defendant Hinthorne knew these facts and knew that the bunk arrangement in his particular cell presented unique dangers. Accordingly, Plaintiff has sufficiently plead a claim of deliberate indifference against these three Defendants.

      **IT IS THEREFORE ORDERED:**

      1.      According to the Court's Merit Review of Plaintiff's complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment deliberate indifference claim against Defendants Osmundson, Miller and Hinthorne. Additional claims shall

not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

2. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

3. The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants files a motion. Therefore, no response to the Answer is necessary or will be considered.

6. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

7. The Court grants Defendants' counsel(s) leave to depose Plaintiff at his place of confinement. Defendants' counsel(s) shall arrange the time for the deposition.

8. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9. If Defendants fail to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants. Formal service will require Defendants to pay the associated costs under Federal Rule of Civil Procedure 4(d)(2).

10. The Court directs the Clerk to attempt service on Defendants under the standard procedures.

March 7, 2022  /s/ Michael M. Mihm
ENTERED  MICHAEL M. MIHM
 UNITED STATES DISTRICT JUDGE